UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

APPLIED ENERGY TECHNOLOGIES, INC.,

    Plaintiff,

v.                                            Case No. 09-CV-11959-DT

SOLAR LIBERTY ENERGY SYSTEMS, INC.,

    Defendants.

_____/

**ORDER DENYING PLAINTIFF'S "MOTION FOR RECONSIDERATION . . ."**

Pending before the court is a "Motion for Reconsideration, Motion for Leave to File a Sur-Reply, and Request for Oral Argument," filed on August 31, 2009 by Plaintiff Applied Energy Technology, Inc. ("AET"). The motion has been fully briefed, and the court determines that a hearing is not required.[1]  *See* E.D. Mich. LR 7.1(e)(2); 7.1(g). For the reasons set forth below, the court will deny the motion.

**I. INTRODUCTION**

On May 21, 2009, AET initiated the instant litigation, asserting two counts against Defendant Solar Liberty Energy Systems. The complaint focuses on a "Confidentiality and Non-Disclosure Agreement" (the "NDA") entered into by Solar Liberty and Latitude Energy Structures, LLC ("Latitude") in late November/early December of 2008. (*See* Compl. Ex. A.) Sometime after the NDA was executed, Latitude filed for bankruptcy, and all of its rights and benefits in the NDA that were owned by Latitude were assigned to AET. (*Id.* at ¶ 24.)

---

[1] The court will thus deny Plaintiff's request for oral argument.

In the first count of the complaint, AET seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that it has not violated the NDA and may continue to sell a particular solar panel racking system. (Compl. ¶¶ 36-40.) In the second count, AET asserts a defamation claim based on Solar Liberty's alleged statements that AET stole Solar Liberty's proprietary designs. (*Id.* ¶¶ 41-45.)

After the complaint was served, Defendant filed a motion to dismiss or, in the alternative, to transfer to the Western District of New York on July 13, 2009. A response was filed on August 5, 2009, and a reply was filed on August 17, 2009. The court set a hearing to occur on September 9, 2009, but later determined that a hearing would not aid in the court's determination of issues that were relatively straightforward –not particularly complicated or unusual, as Plaintiff here characterizes them– and was unnecessary. That decision was made only after careful review of the briefs, and is consistent with the local rules, *see* E.D. Mich. LR 7.1(e)(2), and the court's common practice.[2]

---

[2] There should be nothing "unexpected" about a court in this district canceling a hearing in advance of oral argument and issuing decisions on the briefs, although Plaintiff characterizes it as such. The local rules specifically provide that "[o]ral hearings . . . will be held *unless the judge at any time prior to the hearing orders their submission and determination without oral hearing on the briefs* filed as required by this rule." E.D. Mich. LR 7.1(e)(2) (emphasis added). Additionally, this court's longstanding scheduling order provides that "[a]n 'oral argument' or 'hearing' date may be identified, but such date is merely a scheduling device and not a guarantee that argument will be conducted. A motion may be decided on the briefs only, and sometimes just days before argument." (Standard Scheduling Order at 5.) Although a scheduling order had not yet issued in *this* case, the court's pattern version of this scheduling order is found on the court's website, under this judge's practice guidelines. *See* http://www.mied.uscourts.gov/Judges/guidelines/index.cfm?judgeID=12.

The court hopes that it does not expect too much of counsel in its desire that they familiarize themselves with the court's practice guidelines and standard orders.

The court thus issued an order in advance of the hearing, on August 27, 2009, which granted in part Defendant's motion and transferred this case to the Western District of New York. Plaintiff now asks the court to reconsider its conclusion.

## II. STANDARD

Motions for reconsideration may be granted when the moving party shows (1) a "palpable defect," (2) by which the court and the parties were misled, and (3) the correction of which will result in a different disposition of the case. E.D. Mich. L.R. 7.1(g)(3). A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest or plain." *Olson v. The Home Depot*, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004).

## III. DISCUSSION

Plaintiff argues that four palpable errors are found in the court's August 27, 2009 order, the correction of which would result in a different disposition of this case. The court disagrees, but will address each argument in turn. As an aside, the court agrees in part with Plaintiff's concern that the scope of Defendant's response brief was too broad –in that Defendant responded to some of the arguments raised in Plaintiff's motion for reconsideration– considering the local rule that generally does not permit responses to motions for reconsideration. *See* E.D. Mich. LR 7.1(g)(2). The court, however, finds nothing particularly troubling in Defendant's brief, because Plaintiff's motion was for more than just reconsideration, and included in its motion a request for leave to file a sur-reply brief, as well as a request for oral argument. Responses are generally permitted, indeed required, to miscellaneous non-dispositive motions. *See* E.D. Mich. LR 7.1(d)(2)(C)(B). The court views the issues implicated by Plaintiff's

request for reconsideration as heavily intertwined with those implicated by Plaintiff's request to file a sur-reply brief and for oral argument; in fact, the issues as presented by *both* parties are intertwined. Defendant made a clear enough attempt to comply with the spirit of the rule's prohibition by limiting its argument, primarily, to the motion for leave to file a sur-reply. To the extent that any argument crossed the line, this appears to be due mainly to Plaintiff's decision to file a combined brief. In any event, the court determines that a response to the motion to reconsideration is acceptable, and so orders, and will consider the entirety of Defendant's September 2, 2009 response. *See* E.D. Mich. LR 7.1(g)(2) ("No response to the motion and no oral argument are permitted *unless the court orders otherwise.*" (emphasis added)).

### A.  Sur-reply Brief

Plaintiff argues that it should have been allowed to file a sur-reply brief because Defendant allegedly made new arguments and submitted additional evidence in its reply brief. Plaintiff argues that the opportunity to file a sur-reply brief was particularly important because the court ruled on the motion to transfer without conducting a hearing.

This is not a situation where Plaintiff requested leave to file a sur-reply brief, the court denied leave, and then improperly relied on new evidence to grant Defendant's motion. Fundamentally, Plaintiff did not seek leave to file a sur-reply until *after* the court issued its order on the motion to transfer, and Plaintiff never filed a motion to strike the "new" evidence. Plaintiff attempts to argue that the court did not allow it an opportunity to earlier file such motions, but the court did not issue its order granting Defendant's motion to transfer until a full ten days after Defendant's reply brief was filed. Plaintiff

had plenty of opportunity to file any necessary motions–and the court issued its order at the end of the business day on August 27, 2009, so Plaintiff indeed had a full ten days to act.

Additionally, the court simply did not rely or accept any arguably "new" arguments or evidence in granting Defendant's motion to transfer. A complete review of the court's August 27, 2009 order reveals that the court's decision was based primarily on the language of the relevant forum selection clause in the NDA. This issue was unaffected by any "new" arguments made by Defendant in its reply brief.

The court does accept Plaintiff's position that Defendant's reply brief was of a broader scope than its original motion. However, Plaintiff has not identified a single ruling of the court that improperly relied on any of the "new" arguments in granting the motion. Rather, as Plaintiff acknowledges, the court specifically stated that it would not address Defendant's improper assignment argument, because it was raised for the first time in the reply brief. (*See* 8/27/09 Order at 9, n.5.) On the same page, the court also referred to arguments made in Defendant's reply brief but then stated that this argument "even if true" did not support Defendant's position. (*Id.* at 9.) Thus, on page nine, the court expressly did not rely on or accept any of Defendant's "new" arguments.

Plaintiff argues that the court "did consider Defendant's arguments and evidence that [Plaintiff] engaged in a settlement 'ruse'." (Pl.'s Mot. at 2.) Plaintiff goes so far as to say "[i]n fact, the Court weighed the fact that [Plaintiff] quickly filed this lawsuit after the ASES Conference against AET without hearing AET's side of the story." (*Id.*) In support, Plaintiff includes the following quotation from the court's August 27, 2009 order:

5

> The court is inclined to find that if costs were such a high concern to AET it would not have filed this lawsuit as quickly as it did, less than a week after the ASES Conference, but would have instead explored further discussions or, perhaps, waited until Solar Liberty filed an action, which would have been required to have been filed in AET's home venue.

(Pl.'s Mot. at 2 (quoting 8/27/09 Order at 13-14).)  At first blush, this quotation appears to support Plaintiff's position that the court relied on Defendant's settlement "ruse" argument.  However, Plaintiff inexplicably overlooked the court's conclusion immediately following:

> Nonetheless, AET has presented an affidavit stating that a New York litigation would impose a hardship on it as a small company and the court recognizes that, indeed, out-of-state litigations result in greater costs than in-state litigations.  *Accordingly, the court finds that this factor weighs slightly in favor of AET's chosen forum.*

(8/27/09 Order at 14 (emphasis added).)  Thus, while Plaintiff argues that the court weighed this issue against Plaintiff without first hearing from Plaintiff, the fact is that the court weighed this factor *in favor of* Plaintiff and *against* Defendant.

Nothing in the court's language can reasonably be construed to accept Defendant's interpretation of the facts as a "settlement ruse."  The only sections of the order that refer to the alleged "settlement ruse" simply recite Defendant's argument, without approving or accepting the argument.[3]  To the extent the court was "inclined" to

---

[3] For example, on page thirteen, the court stated Defendant's argument: "Further, Solar Liberty argues that, had AET been more concerned with costs, it would not have undertaken an alleged settlement 'ruse' in order to file this action first but would have instead genuinely explored settlement as Solar Liberty attests it was willing to do." (8/27/09 Order at 13.)  In a footnote, the court explained what Defendant meant by a settlement "ruse": "Solar Liberty contends that AET scheduled a conference call to be held on May 21, 2009 to discuss the parties' differences and 'sort this out.' (Def.'s Reply at 2.)  Just prior to the conference call, however, and without prior notice to Solar Liberty, AET initiated this action. (*Id.*)." (*Id.* at 13 n.6.)  In setting forth Defendant's position, the court used such terms as "Solar Liberty *argues*" and "Solar Liberty

6

find that, in order to conserve costs, Plaintiff might have waited to, perhaps, explore settlement options before filing the lawsuit, the court's inclination was based, not on any allegation of a "ruse," but on the timing of this lawsuit, filed so quickly after the ASES Conference, a fact ascertained from the face of the complaint itself.

Plaintiff relies on *Seay v. Tennessee Valley Authority*, 339 F.3d 454 (6th Cir. 2003), in which the Sixth Circuit held that it was error for the district court to deny a motion to strike evidence submitted in a summary judgment reply brief where the court relied on some of the new evidence in granting summary judgment. *Id.* at 482. Plaintiff, however, does not correctly represent the holding of *Seay*. The Sixth Circuit did not hold, as Plaintiff suggests, that it was "reversible error to not allow a respondent to file a sur-reply where the movant includes new evidence and arguments in its reply brief and the Court unexpectedly rules on the motion before oral argument or a motion for leave to file a sur-reply can be filed." (Pl.'s Mot. Br. at 1.) Instead, the *Seay* court (1) reversed the district court's denial of a motion to strike where (2) the district court ruled on the pending motion three days after the reply was filed and (3) specifically relied on new information which was submitted in the reply, (4) because the procedure was improper under Federal Rule of Civil Procedure 56(c). *Seay*, 339 F.3d at 481-82. None of these situations exist in this case.

First, Plaintiff did not file a motion to strike. Second, this court ruled on the pending motion to transfer a full ten days after the reply was filed. Plaintiff in this case had plenty of opportunity to file either a motion to strike any objectionable exhibits or a

---

*contends*," which should have signaled to counsel that the court was merely setting forth Defendant's arguments and contentions, not accepting them as true.

7

motion for leave to file a sur-reply brief. Third, contrary to Plaintiff's protestations, addressed above, this court did not rely on any of the "new" arguments or evidence in making its determination that a transfer of venue is proper. Indeed, in *Seay,* the Sixth Circuit specifically did not reverse any of the counts of the plaintiff's complaint which were dismissed by the district court in which the district court did not rely on the new evidence. *Id.* at 482. Finally, *Seay* involved an analysis under Federal Rule of Civil Procedure 56(c), which sets forth certain procedural requirements regarding notice to adverse party when ruling on a motion for summary judgment under Rule 56. Specifically, the *Seay* court held that "Rule 56(c) requires that an adverse party receive ten days notice before a district court may enter summary judgment." *Id.* at 481 (citing Fed. R. Civ. P. 56(c)). "It is only logical that the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond." *Id.* at 481-482 (citations omitted). The court also noted that "[t]his is particularly true when the district court relies on the new evidentiary submissions." *Id.* at 482. The court's August 27, 2009, order did not implicate Rule 56, and thus *Seay* is legally inapposite, as well as factually distinguishable.

The court therefore rejects Plaintiff's argument that a palpable defect exists in a decision being rendered without first allowing Plaintiff to submit a sur-reply brief. The court did not rely on any of the arguably new evidence or arguments in granting

8

Defendant's motion to transfer and, moreover, Plaintiff did not file a motion for leave to file a sur-reply brief within the ten days after the filing of the reply brief.[4]

### B. Plaintiff's Argument Relating to "Scaring Potential Customers Away"

Plaintiff next argues that, in addressing the interests of justice factor, the court failed to consider that "AET was forced to quickly file this lawsuit as a defensive declaratory judgment lawsuit because Defendant was scaring potential customers away from AET by alleging AET stole its designs (i.e., engaging in the 'sad scenario')." (Pl.'s Mot. at 3.) In Plaintiff's response to Defendant's motion to transfer, Plaintiff described the "sad scenario":

> Instead of bringing a lawsuit for breach of the NDA, Defendant Solar Liberty has engaged in what courts have described as a "sad scenario." Defendant has threatened to sue AET for stealing its design for a proprietary solar panel racking system, but has refused to bring a lawsuit. Defendant has also scared away potential customers from AET at the recent ASES Conference.

(Pl.'s Resp. at 13-14.) Plaintiff now argues that the court's alleged failure to consider this factor constitutes a palpable defect the correction of which will result in a different disposition of the case. The court disagrees.

The chronology of the facts of this case, as articulated by Plaintiff in its complaint and as fundamentally adopted by the court in its August 27, 2009 order, are as follows. On March 17, 2009, Defendant sent Plaintiff two emails indicating that if Plaintiff disclosed any proprietary information given to it by Latitude then Defendant would file a

---

[4] Nor will the court grant Plaintiff's belated motion to allow it to file a sur-reply brief. Inasmuch as the court has already ruled on the motion to transfer, there are no remaining issues which the sur-reply can address. In any event, much of the content of the proposed sur-reply is incorporated in the motion to reconsider.

lawsuit against Plaintiff. (Compl. ¶ 26.) Over a month later, on April 24, 2009, Plaintiff's attorney responded by saying that it did not have any such proprietary information and asking Defendant to identify what it considered to be proprietary information. (*Id.* ¶ 27.) On May 15, 2009, Defendant responded by letter indicating that Defendant considered the solar panel racking system to be based on Defendant's proprietary designs, and demanding that Plaintiff immediately cease any further use or dissemination of that design. (*Id.* ¶ 31.) While hand-delivering this letter, Defendant's president allegedly accused Plaintiff of stealing the design and said he was going to sue Plaintiff if it did not stop offering its solar panel racking system for sale. (*Id.*)

Plaintiff's complaint also alleges that both Plaintiff and Defendant attended the American Solar Energy Society's National Solar Conference ("ASES Conference") from May 11, 2009 to May 16, 2009. (*Id.* ¶ 28.) Plaintiff asserts that during the conference, specifically on May 15, 2009 and May 16, 2009, Defendant's president approached Plaintiff's booth, accused Plaintiff of stealing Defendant's designs, and threatened a lawsuit. (*Id.* ¶¶ 29, 32.) Plaintiff asserts these accusations were made loudly and were intended to scare customers away. (*Id.* ¶ 32.) Plaintiff also asserts that Defendant approached at least one customer directly. (*Id.* ¶ 28.)

According to the allegations in the complaint, therefore, the first direct identification of proprietary information and the first direct threat of a lawsuit did not occur until May 15, 2009, when Defendant responded to Plaintiff's April 24, 2009 letter and when Defendant approached Plaintiff's booth at the ASES Conference. Defendant allegedly made further threats the next day, on May 16, 2009. The complaint does not identify any direct threats of lawsuit or "scaring away" of customers before May 15 or

after May 16.[5]

Less than a week after the first direct accusation by Defendant and the first threat of lawsuit, Plaintiff initiated this action on May 21, 2009.

Contrary to Plaintiff's argument, the court did, in fact, consider the timing of these allegations when analyzing the "interests of justice" factor in its August 27, 2009, order. However, rather than finding that this chronology evinced the "sad scenario" that Plaintiff claims, the court instead found this timing indicative of a "race to the courthouse." (8/29/09 Order at 17.) The court found that if it did not transfer this action it would sanction a "race to the courthouse" in contravention of an agreed-upon forum selection clause. (*Id.*) The court does not agree with Plaintiff now, nor did it agree with Plaintiff at the time of the August 29, 2009 order, that two days of threats, on May 15 and May 16, 2009, constitute a "sad scenario" sufficient to weigh the interests of justice factor in favor of Plaintiff. The court is not convinced, based on the facts alleged in the complaint, reiterated in Plaintiff's response, and now repeated in Plaintiff's reconsideration motion, describe a situation where Plaintiff was "forced" to file a lawsuit because Defendant "refused" to initiate an action and was instead actively scaring away customers. The complaint described two discrete days of alleged misconduct, during a conference that had ended five days prior to Plaintiff filing the lawsuit. Indeed, given the facts *as presented by Plaintiff*, the court remains persuaded that the more plausible explanation for the filing date of Plaintiff's complaint was Plaintiff's attempt to beat

---

[5]The court does not consider the March 17, 2009 emails from Defendant as an accusation or a threat. Based on the allegations in the complaint, the letter only stated that *if* Plaintiff disseminated any proprietary information then Defendant would initiate a lawsuit. (Compl. ¶ 26.)

11

Defendant to the courthouse. Thus, the court rejects Plaintiff's argument that it was misled by a palpable defect when it failed to consider Plaintiff's purported "sad scenario" when evaluating the interests of justice factor.

### C.  "Race to the Courthouse"

Relatedly, Plaintiff next argues that the court erred when it concluded that allowing this action to remain in Michigan would sanction a "race to the courthouse." Plaintiff argues that this conclusion of the court is "incorrect" and "contradict[ory]" and this "incorrect conclusion led to a serious mistake" in the court's transfer analysis. (Def.'s Mot. at 5-6.) Plaintiff argues that there could be no race to the courthouse because, under the forum selection clause, Defendant would have been required to file any action for breach of contract in Michigan. Thus, Plaintiff argues, Plaintiff did not race to the courthouse because it would have rather waited for Defendant to file the action, as it would have been required to do, in Michigan.

The court agrees with Plaintiff that under the NDA, if Defendant had been first to file a breach of contract action it would have been required to file the action if Michigan. However, just because a party is contractually obligated to file an action in a particular forum, does not mean it will inevitably interpret that obligation as mandatory under all circumstances, *viz.*, Plaintiff's choice in filing this case. Perhaps Plaintiff perceived that Defendant would attempt to circumvent the forum selection clause and file a lawsuit in New York. Perhaps Plaintiff wanted to be the first to file the lawsuit because it wanted to be the one to frame the issues before the court.[6]  Perhaps Plaintiff simply wanted to

---

[6]The court notes, for example, that Defendant appears to contest whether some of the rights under the relevant contract were properly assigned to Plaintiff.  Perhaps

file in its home venue and risk whether a judge would accept its arguments to keep venue in this district. There are a variety of litigation tactics and risks which confront any attorney when deciding when, where, and how to file an action. The court need not decipher exactly why Plaintiff filed this litigation in Michigan, less than a week after the alleged improper conduct by Defendant at the ASES Conference. The court need not even determine whether it was wise of Plaintiff to do so, rather than first attempting to further discuss the matter with Defendant (that is, discuss the situation beyond the initial exchange of letters described in the complaint), or waiting beyond six days for Defendant to file an action against Plaintiff, which at least *should* have been filed in Michigan. It will remain unclear to the court exactly why Plaintiff came to *this* courthouse in light of the NDA forum selection clause,[7] but it does appear to the court that Plaintiff indeed raced to file, generally, and to do so in Michigan specifically. The court does not agree that this conclusion contradicts the court's observation that if Defendant had first filed a breach of contract action, it would have been required to file in Michigan.

Accordingly, nothing Plaintiff now argues has established that a palpable defect exists in the court holding: "Because this forum selection clause is presumed valid, the court finds that granting deference to [Plaintiff's] choice [of a Michigan forum] in this case would permit it to escape the terms of an accepted forum selection clause and

---

Plaintiff was concerned that Defendant would file a lawsuit in New York against Plaintiff that was *not* based on the NDA.

[7] As stated above, the court is not persuaded by its "sad scenario" arguments.

instead sanction a 'race to the courthouse' in contravention of an agreed-upon contractual forum." (8/27/09 Order at 17.)

### D.  Whether the Forum Selection Clause Required Plaintiff to Bring the Defamation Claim in Defendant's Home Forum

Plaintiff next argues that the court incorrectly held that the forum selection clause required that Plaintiff's defamation claim be brought in New York.  Plaintiff argues that this erroneous interpretation of the forum selection clause led to the court's conclusion that the case should be transferred to New York.

First, the court did not explicitly hold that the NDA necessarily required Plaintiff's defamation claim be brought in New York.  The court concedes that certain language in its August 27, 2009 order could be interpreted to support such a conclusion.  Nonetheless, it simply does not matter whether the NDA forum selection clause was permissive or mandatory with respect to a defamation cause of action.  Even accepting Plaintiff's argument that the NDA forum selection clause is only permissive with respect to the defamation claim, it does not affect this court's analysis under 28 U.S.C. § 1404(a).

In its August 27, 2009 order, the court held that when determining whether to transfer an action under § 1404(a) the following three requirements must be met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties."  (8/27/09 Order at 10 (quoting *Kepler v. ITT Sheraton Corp.,* 860 F. Supp. 393, 398 (E.D. Mich. 1994).)  Factors to consider in determining whether to transfer venue include:

14

      (1)    convenience of witnesses;
      (2)    the location of relevant documents and relative ease of access to sources of proof;
      (3)    the convenience of the parties;
      (4)    the locus of the operative facts;
      (5)    the availability of process to compel the attendance of unwilling witnesses;
      (6)    the relative means of the parties;
      (7)    the forum's familiarity with the governing law;
      (8)    the weight accorded the plaintiff's choice of forum; and
      (9)    trial efficiency and the interests of justice, based on the totality of the circumstances.

(8/27/09 Order at 10 (quoting *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).) After addressing these factors individually, the court found that the factors were fairly evenly split, with the exception that the interests of justice weighed strongly in favor of transferring the case to New York in light of the forum-selection clause found in the NDA. The forum selection clause, by this court's conclusion, is mandatory with respect to Plaintiff's declaratory judgment count.

Whether it be mandatory or permissive with respect to the defamation claim, the interests of justice favored transfer. Indeed, in its August 27, 2009 order, the court also stated that, had the defamation claim been brought separately from the declaratory action, the court would have nonetheless transferred the case under § 1404. (8/27/09 Order at 9 n.5.) As the court explained, transfer would be appropriate even if the only claim before the court were the defamation claim, "which arose in New York and is asserted against a New York defendant." *Id.* Transfer of a solitary defamation claim would be based not on the NDA, but rather on a balancing of the relevant factors. Those factors would tip even more strongly in favor of transfer if the declaratory judgment claim were absent, because the defamation claim is more deeply rooted in New York than is the declaratory judgment claim.

Finally, the court remains unpersuaded by Plaintiff's argument that a declaratory judgment action such as this is not an "action." The language of the NDA provides that "[t]he party wishing to bring an action under this Agreement shall bring it in the home jurisdiction of the other party and shall agree to jurisdiction and venue as to all related causes of action arising under the Agreement." (NDA ¶ 4.) Here, Plaintiff brought a declaratory action pursuant to its alleged rights under the NDA, seeking a declaration that it is not in breach of the NDA. In the present motion, Plaintiff takes issue with the court's earlier statement that it "failed to cite any case for the remarkable proposition that a declaratory judgment action is not an 'action' as that term is generally known." (8/27/09 Order at 17.) Plaintiff cites to two vintage Supreme Court cases, but those cases stand only for the general proposition that "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 248 (1952); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-672 (1950) ("Jurisdiction in this sense was not altered by the Declaratory Judgment Act. Prior to that Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked."). To hold that the character of the threatened

action determines jurisdiction is not to hold that a declaratory judgment action is not an action. An "action," in its usual sense, means simply "a lawsuit brought in court." *Black's Law Dictionary* (1991). As applied here, the NDA applies to Plaintiff's "lawsuit, brought in court," arising out of the NDA.

Plaintiff has failed to identify a palpable defect the correction of which results in a different disposition of this case.

## IV.  CONCLUSION

IT IS ORDERED that Plaintiff's "Motion for Reconsideration, Motion for Leave to File a Sur-Reply, and Request for Oral Argument" [Dkt. # 11] is DENIED.

       s/Robert H. Cleland  
       ROBERT H. CLELAND  
       UNITED STATES DISTRICT JUDGE

Dated:  November 9, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 9, 2009, by electronic and/or ordinary mail.

       s/Lisa Wagner  
       Case Manager and Deputy Clerk  
       (313) 234-5522